I,WILLIAMS, Judge.
The defendants, Denmon’s Louisiana Pharmacy, Inc. and Robert Denmon, appeal a judgment in favor of the plaintiff, Finova Capital Corporation. The district court denied the defendants’ exception of prescription and granted summary judgment in favor of plaintiff in the amount of $20,134.56. For the following reasons, we reverse and render.
FACTS
On December 6, 1994, Denmon’s Louisiana Pharmacy, Inc. (the “pharmacy”), entered into a lease for equipment and an advertising agreement with Recomm International Display, Limited (“Recomm”), which was named the “vendor” in the lease. Robert Denmon signed the lease as president of the pharmacy and as personal guarantor of the lease payments. Under the lease, the pharmacy agreed to make 48 monthly payments of $310 in a lease/purchase of a “Vox Apothecary” electronic sign, which was supposed to display advertising messages programmed by Recomm. Under the separate advertising agreement, Recomm agreed to make 48 payments of $270 to the pharmacy as a “license fee” to display the advertisements. As a result of the contracts, the pharmacy would make a monthly net payment of $40. The pharmacy was one of several thousand lessees that agreed to lease these signs, or display boards.
On December 20, 1994, Tricon Capital Corporation (“Tricon”) signed the lease as lessor. Tricon apparently provided financing of the sign, which was marketed to the pharmacy by Recomm, and unilaterally increased the pharmacy’s monthly payment amount under the lease. Finova Capital Corporation (“Finova”) subsequently succeeded Tricon as the lessor.
|?In an affidavit, Denmon later stated that he stopped paying the lease in March 1995, because he did not accept the altered payment amount and because he had not received a working sign or payments from Recomm. In a June 1995 letter to Den-mon, Finova stated that the account was in default and that all remaining amounts due under the lease had been accelerated and were payable immediately. Denmon did not respond to the letter.
In January 1996, Recomm filed for Chapter 11 bankruptcy protection. Under an injunction issued by the U.S. Bankruptcy Court for the Middle District of Florida, all collection efforts pursuant to the lease agreements were stayed and the prescriptive period was suspended pending approval of a proposed plan of reorganization. The pharmacy and Denmon were listed as unsecured creditors of Recomm in the bankruptcy petition. In May 1998, the bankruptcy court entered an order confirming the debtor’s plan of reorganization (“Plan”). This Plan modified the terms of the lease between Finova and the pharmacy by recalculating the amounts due to Finova and releasing Finova from any claims or defenses that may have been raised by the pharmacy on matters which occurred before June 30, 1998, the effective date of the Plan. Finova allegedly sent the pharmacy a modification letter dated June 30, 1998, listing several payment options based on the Plan. The letter stated that if the pharmacy did not make a selection within 30 days, it would be deemed to have chosen the option extending the lease term to 57 monthly installments from June 1998. The pharmacy did not respond to the letter.
*1212 In February 2001, Finova sent the pharmacy a notice of default | (¡demanding payment of the past due amount of $9,156.86. In November 2002 the plaintiff, Finova, filed a petition against the defendants, Denmon’s Louisiana Pharmacy, Inc. and Robert Denmon, seeking to collect all payments due under the lease. Subsequently, the plaintiff filed a motion for summary judgment and defendants filed an exception of prescription. After a hearing, the district court denied defendants’ exception of prescription and rendered summary judgment in favor of plaintiff, finding that the Plan had extended the lease term such that the lawsuit had been timely filed prior to termination of the lease. Defendants’ motion for new trial was denied. The defendants appeal the judgment.
DISCUSSION
The defendants contend the district court erred in denying their exception of prescription. Defendants argue that the plaintiffs claim has prescribed because they declined to extend the term of the lease under the bankruptcy plan.
Under LSA-C.C. art. 3494, an action to recover rent arrearages is subject to the prescriptive period of three years. Starns v. Emmons, 538 So.2d 275 (La.1989). An appellate court applies the manifest error standard in reviewing the trial court’s factual findings with respect to an exception of prescription. Qayyum v. Morehouse General Hospital, 38,530 (La.App. 2d Cir.5/12/04), 874 So.2d 371.
In the present case, the Plan defines defendants as participating lessees and the plaintiff as a participating lessor. Additionally, the Plan includes their lease in the classification of “Class C,” which consists of the 14claims of participating lessees with advertising contracts and the guarantors of the lessees’ obligations. In their brief, defendants contend the Plan modified only the principal balance and not the term of the original lease, since they did not choose to extend the term.
However, in Finova Capital Corporation v. Short’s Pharmacy, Inc., 39,642 (La.App. 2d Cir.5/13/05), 904 So.2d 57, this court previously considered the effects of the same reorganization plan on an almost identical lease. In the prior case, contrary to defendants’ contention, this court determined that the Plan modified Class C leases in Article II, Section D.3.b.(3)(a) through (e) in the following manner:
(a) adjusting the “effective balance,” which is the balance due as of December 31, 1995, but discounting that balance by 6%;
(b) by reducing the original contract interest rate from 16% to 12%;
(c) by setting forth a formula that adds the adjusted effective balance of the lease to an adjusted remaining balance owed of the lease, the sum of which results in the Class C “revised principal balance” due on the lease;
(d) by giving any Participating Lessee the option to make a one-time pre-payment of the Class C “revised principal balance” within 30 days of the effective date, i.e., June 30, 1998, and thereby satisfy its obligations under the lease;
(e) by providing a formula for “revised monthly lease payments.” The formula provides that the revised principal balance shall be divided by the sum of missed payments between January 1, 1996 and June 30,1998, plus the number of payments remaining due on the original lease after June 30, 1998, with an option “but not the obligation” to extend the term of the lease up to 60 months from the “effective date” of June 30, 1998 subject to the provisions of paragraph (f). Lessees are given 30 days to elect to extend the term of their lease. *1213 If they fail to do so, then the lessee is “deemed not to extend such term.”
Thus, paragraph (e) provided a new schedule of monthly installments by which the lessee would pay the revised principal balance of the lease. As Instated above, the revised number of monthly installments is determined first by adding the number of months remaining under the original lease as of the Plan effective date and the number of monthly installments not paid between January 1996 and June 1998. In this case, five monthly installments remained on the lease and defendants did not make any payments in the 30-month period of January 1, 1996 to June 30, 1998, resulting in 35 monthly installments. Consequently, under the Plan the number of revised lease payments was extended to 35 months beyond June 30, 1998, even though defendants did not elect to extend the term, subject to any adjustment required under paragraph (f) of the Plan.
Paragraph (f) provides that no revised monthly payment shall fall below $150 nor exceed $250, or 83% of the original monthly lease installment. If such a situation occurs, then the number of installments shall be either decreased to raise the monthly amount to $150 or increased to lower the monthly amount to $250 or 83% of the original monthly installment.
In any event, we must address the issue of when prescription began to run in this case. The record shows that defendants had failed to make any installment payments under the original lease since March 1995, and the lease expressly provided that if “you do not pay rent when due ... you will be in default.” Although the bankruptcy court’s preliminary injunction temporarily enjoined plaintiff from seeking judicial enforcement of the lease, there is no indication that the injunction enjoined plaintiff from collecting rent, sending invoices for rent or exercising its option to | fiaccelerate the rent due under the lease agreement.
Additionally, the plaintiff was aware that defendants had failed to make a payment on the lease since 1995. Significantly, defendants failed to select one of the options provided under the Plan by either responding to plaintiffs modification letter or by performing another option within 30 days of the effective date as required by the Plan. The plaintiffs letter stated that the first revised monthly payment was due in August 1998 and defendants did not make any payment. Pursuant to the lease, defendants were in default at that time.
The three-year prescriptive period of Article 3494 commences to run from the day payment is exigible. LSA-C.C. art. 3495. Liberative prescription begins to run when a cause of action is judicially enforceable, or from the day on which the creditor could institute his demand. LSA-C.C. art. 3495, Comment (b); Ledoux v. City of Baton Rouge/Parish of East Baton Rouge, 99-2061 (La.2/29/00), 755 So.2d 877.
Under the circumstances of this case, the defendants’ failure to respond to the plaintiffs letter or to make any payment placed plaintiff on notice that the defendants did not intend to perform any part of the modified lease agreement from the default date of August 1998. Therefore, we conclude that prescription began to run on August 30, 1998, the date when plaintiff could have acted on its claim for payment. However, plaintiff failed to enforce its rights under the lease within the three-year period after that date. Consequently, the plaintiffs claim has prescribed. Accordingly, we shall reverse the district court’s judgment denying the defendants’ |7exception of prescription and granting plaintiffs motion for summary judgment.
*1214 CONCLUSION
For the foregoing reasons, the district court’s judgment denying the defendants’ exception of prescription and rendering summary judgment in favor of the plaintiff is reversed. The defendants’ exception of prescription is granted and judgment is hereby rendered in favor of the defendants, Denmon’s Louisiana Pharmacy, Inc. and Robert Denmon, dismissing plaintiffs claims. Costs of the district court and on appeal are assessed to the plaintiff, Finova Capital Corporation.
REVERSED AND RENDERED.